UNITED STATES FEDERAL COURT
EASTERN DISTRICT

MAHER WAAD, an individual;
and EXECUTIVE CAR RENTAL, a Michigan
Corporation;

      Plaintiffs,

vs.

      Case No.
      Honorable:

DMITRIY MOVSESYAN, an individual,

      Defendant.

_____

HANEY LAW GROUP, PLLC
STEVEN A. HANEY, SR. (P63947)
Attorney for Plaintiffs
3000 Towncenter Drive; Suite 2570
Southfield, MI 48075
Tel - 248.414.1470
steve@haneygroup.net

_____

## COMPLAINT AND JURY DEMAND

**NOW COME** the Plaintiffs, Maher Waad, an individual and Executive Car

Rental, a Michigan Corporation through their attorney, Steven A. Haney, Sr. of the

Haney Law Group, PLLC, and states for his Complaint as follows:

## THE PARTIES

1.      Plaintiff Maher Waad, [hereinafter "Plaintiff Waad"], an individual is a resident of the State of Michigan, in the County of Oakland.

2.      Plaintiff Executive Car Rental, [hereinafter "Plaintiff Executive"], is a Michigan Corporation, operating at all times relevant in the State of Michigan and the State of Florida, where the company engages in interstate commerce.

3.      Defendant, Dmitriy Movsesyan [hereinafter "Movsesyan"], is an individual, domiciled in the State of Michigan, Oakland County, last known to be the Marketing Campaign Manager for current Michigan Attorney General Dana Nessel.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper and based on 28 U.S.C. § 1331 as United States District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Further, this Court has jurisdiction over the companion state law extortion claim under 28 U.S.C. § 1367.

5.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

6.     Venue is further proper in this Judicial District under 28 U.S.C. § 1391 and through Diversity of Citizenship, as the Plaintiff engages in interstate commerce with licensed business operations in both Michigan and Florida.

## FACTUAL BACKGROUND

7.     In 2012, Plaintiff Waad founded the Michigan business entity Executive Car Rental, which is an independent car rental corporation providing rental car services to consumers in Michigan and Florida.  At all times relevant Plaintiff Executive operated sixteen rental locations, including licenses to operate at International airports located in Detroit, Tampa and Fort Lauderdale.  The current rental fleet of Plaintiff Executive exceeds 1,000 vehicles, with over 100,000 cars rented annually, making it one of the Nation's largest independent car rental operators.

8.     On January 25th, 2019, Michigan Attorney General Dana Nessell served upon Plaintiff Executive Car Rental, a Notice of Intended Action, whereby Nessel alleged violations of the state's Consumer Protection Act, including "making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  The bases of the Government's Intended Action was rooted in customer dissatisfaction of a variety of complaints associated with locations both

in Michigan and Florida. **(Ex. A - January 25th, 2019 Notice of Intended Action)**.

9.      On **the same date** Notice was received, counsel for Plaintiff Executive contacted the Michigan Attorney General's Office for the purposes of scheduling a meeting to resolve the addressed customer concerns. **(Ex. B - January 25th, 2019 Email Correspondence from Plaintiff Executive's Counsel to the Michigan Attorney General's Office).**

10.     In response to Plaintiff Executive's January 25th, 2019 correspondence, Michigan Assistant Attorney General Darrin Fowler acknowledged Plaintiff Executive's response to the January 25th, 2019 Notice of Intended Action, **and confirmed a meeting with counsel for  Plaintiff Executive, scheduled for February 4th, 2019,** to resolve any consumer complaints. **(Ex. C - January 28th, 2019 Email Correspondence from Assistant Michigan Attorney General Darrin Fowler to Plaintiff Executive's counsel).**

11.     On the date of January 29th, 2019, **the day after the Michigan Attorney General's Office acknowledged Plaintiff Executive's response**, the Michigan Attorney General's Office issued a statewide press release pronouncing in part "Nessel will file a lawsuit to seek equitable relief under the Michigan Consumer

Protection Act and financial damages on behalf of affected consumers **unless Executive Car Rental responds by Feb. 6." (Ex. D - January 29th, 2019 - Michigan Attorney General Press Release).** https://www.michigan.gov/ag/0,4534,7-359-92297_47203-488537--,00.html.

For some inexplicable reason the Michigan Attorney General's office issued the press release announcing "Nessel will file suit", referencing the February 6th, 2019 response date, **when Plaintiff Executive had already responded days earlier and scheduled a meeting with her office. (Ex. C - January 28th, 2019 Email Correspondence from Assistant Michigan Attorney General Darrin Fowler to Plaintiff Executive's counsel).**.

12.    On or about the date of February 14th, 2019, upon learning of Plaintiff Executive's well-publicized  legal dispute with the Michigan Attorney General's Office, Plaintiff Waad was contacted by Defendant Dmitriy Movsesyan, who in 2018 was hired by current Michigan Attorney General Dana Nessel as her Campaign Manager **(Ex. E - February 14th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad and corresponding text photograph).**    It should be noted Plaintiff Waad was previously familiar with Defendant Movsesyan when he worked in sales for the Yellow Pages, where

Plaintiff Waad and Plaintiff Executive utilized Yellow Pages advertising services. As noted by the text Exhibit, Plaintiff Waad did not respond to Defendant Movsesyan's repeated attempts of contacting him.

13.     On the date of March 20th, 2019, for the express purpose of avoiding potential costly litigation, Plaintiff Executive Car Rental entered into a Voluntary Assurance Agreement with the Michigan Attorney General's Office **(Ex. F - Voluntary Assurance Agreement).**    Despite the inflammatory political rhetoric offered in the initial Attorney General Press Release, whereby Dana Nessell threatened personally suing Plaintiff Executive alleging over 400 complaints derived from 44 different states, all outstanding matters were settled with Plaintiff Executive for the rather nominal sum of $39,500.    Included in the Assurance Agreement were mutual concessions relative to future business practices associated with Plaintiff Executive's Michigan  rental operations.

14.     On the date of March 24th, 2019, four days after the compromise with the Michigan Attorney General's Office, which was made public by yet another Attorney General Press Release, Defendant Movsesyan again reached out to Plaintiff Waad indicating "he could be of help to him." **(Ex. G - March 24th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**    As

with the earlier February 14th, 2019 prior communication, Plaintiff Waad did not respond to Defendant Movsesyan's overture of "help."

15.    On the date of April 29th, 2019, Defendant Movsesyan against contacted Plaintiff Waad asking "You good my dude?, again receiving no response from Plaintiff Waad **(Ex. G - April 29th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**

16.    On the date of May 16th, 2019, Defendant Movsesyan sent yet another text message to Plaintiff Waad depicting himself and Michigan Attorney General Dana Nessel in a vehicle, driven by Movsesyan, captioned by "Oh look, it's your favorite attorney general in my back seat."**(Ex. G - May 16th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad Depicting Michigan Attorney General Dana Nessel.)**

17.    On the date of June 6th, 2019, the Michigan Attorney General's Office sent correspondence to counsel for Plaintiff Executive Car Rental noting that consumer complaints had come to light, which in the Michigan Attorney General's Opinion, gave cause to believe terms and conditions of the Voluntary Assurance Agreement were being breached by Plaintiff Executive.  The admonition included such minor issues as a factual debate over the difference between chipped vs. cracked

windshields, and whether car rental customers should be charged for returning vehicles late.  The correspondence from the Michigan Attorney General  requested a response to the allegations within 21 days.

18.     On the date of July 14th, 2019, Defendant Movsesyan, sent a text message to Plaintiff Waad looking for work.  Not receiving a response, Movsesyan texted one day later inquiring "are you o.k. homie?", again receiving no response, which followed with his texting Plaintiff Waad "Hey brethren.  I don't know if something happened, or if you are mad at me, or just super busy, but we need to talk today. *I'm supposed to go see the AG tomorrow*." **(Ex. H - July 15th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**

19.     This same day, July 15th, 2019, Defendant Movsesyan texted Plaintiff Waad what appeared to be an image of  Michigan Attorney General Dana Nessel texting him regarding the existence of a domain name, with Movsesyan bragging to Plaintiff Waad how he could sell the domain name to Attorney General Dana Nessel for $50,000. **(Ex. I- July 15th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)** .

20.     On the date of July 15th, 2019, without authorization and unbeknownst to Plaintiff Waad, Defendant Movsesyan sent email correspondence to Assistant

Michigan Attorney General Darrin Fowler stating *"Good afternoon, Mr. Fowler. I am reaching out to you on behalf of Executive Car Rental as I recently joined ECR to help restructure the business, and ensure our clients receive the service they deserve. I understand that we still have 4 pending complaints with your office, and would lovr (sic) an opportunity to meet with you to discuss these, and share with you the changes we are making to the company policies and structure. Please let me know when we can connect. Thanks in advance, Dmitriy Movsesyan, Chief Marketing Officer Executive Car Rental.* **(Ex. J - July 15th, 2019 Email Correspondence From Defendant Movsesyan to Assistant Michigan Attorney General Darrin Fowler).** At no time relevant was Defendant Movsesyan employed in any such capacity with Plaintiff Executive, or in any manner authorized to make such representations on behalf of the Plaintiff company to the Michigan Attorney General's Office.

21. The same day, July 15th, 2019, Assistant Michigan Attorney General Darrin Fowler advised Defendant Movsesyan, *"Dmitriy, Thank you for your message. By copy of this email, I am asking my secretary to forward to your attention the letter I sent ECR's attorney, Steve Haney, in June. The letter advises of some payments and an obligation under the Assurance of Voluntary Compliance that have not*

*been properly fulfilled. Does Executive Car Rental dispute these obligations?  IF not, I  do not see the value of a meeting.  If these obligations are disputed, please let me know the nature of the dispute so I can decide how best to proceed.  I am copying Mr. Haney and you should coordinate with him before responding. Thank you, Darrin F. Fowler - Assistant Attorney General"* **(Ex. J - July 15th, 2019 Email Correspondence From  Assistant Michigan Attorney General Darrin Fowler to Defendant  Movsesyan).**

22.    At no time relevant did anyone from the Michigan Attorney General's Office note the blatant conflict of interest presented by Dana Nessel's former Campaign Manager, Defendant Dmitriy Movsesyan's, unauthorized attempts to inject himself into business negotiations between the Michigan Attorney General's Office, and Plaintiff Executive.  Negotiations which at all times relevant Movsesyan suggested could be influenced by his personal and former professional relationship, and continued connection, with Michigan Attorney General Dana Nessel.

23.    During the time period referenced above, Defendant Movsesyan commented to Plaintiff Waad on his strong personal relationship with the Michigan Attorney General, expressing to him how valuable he was to her during the 2018 Election for Attorney General, where he served as her Campaign Manager.  On numerous

occasions, Defendant Movsesyan boasted of his underworld network of Ukranian computer hackers, who Movsesyan claimed manipulated the 2018 Michigan Attorney General Election.   Notably, this same Ukranian network was referenced to Plaintiff Waad in other text message communications, along with notations of International payouts.   It is believed this same international network ultimately resulted in  Movsesyan's hijacking of Plaintiff Executive's google domain names in both the Tampa, Florida and Detroit, Michigan International airport locations. **(Ex. K - Text Correspondence From Defendant Movsesyan to Plaintiff Waad Referencing "paying the Ukranians" ).**

24.    On July 16th, 2019, one day after his unauthorized contact to the Michigan Attorney General, Defendant Movsesyan sent a text message to Plaintiff Waad stating ***"FYI, just spoke to my girl (****r*****eferencing Michigan Attorney General Dana Nessel****), she is excited about ECR's*** (referencing Plaintiff Executive Car Rental) *commitment to deliver an honorable service to the residents of our great state:)...And I quote  "as long as you are involved MY STAFF and I are confident that ECR (referencing Executive Car Rental) will do the right thing and become a leader in the industry"...Booyah!  Now you are stuck with me."* **(Ex. L - July 16th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**

25.    Based on Plaintiff Waad's interpretation of Defendant Movsesyan's corrupt motives, and those Movsesyan suggested too of the Michigan Attorney General, Plaintiff Waad promptly severed ties with Movsesyan, who acknowledged such severance by way of a text exchange dated July 25th, 2019, which ominously noted *"I was asked why I haven't responded to the request for information (from the Michigan Attorney General's Office), and I told the "powers that be" that my employment with ECR ended last Friday."*    **(Ex. M - July 25th 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**   Based on this information, the last Friday preceding July 25th, 2019, would have been July 19th, 2019, establishing Plaintiff Waad parted ways with Movsesyan only three days after Movsesyan's unauthorized communication sent to the Michigan Attorney General's Office. Curiously, on the date of August 23rd, 2019, less than 30 days after *"the powers that be"* were informed by Defendant Movsesyan that he was no longer  with Plaintiff Executive, the Michigan Attorney General's Office served Plaintiff Executive with a Notice of Intended Action to sue the company for minor breaches of the Voluntary Assurance Agreement.  The timing of the Notice of Suit creates a question of fact that Defendant Movsesyan was correct in characterizing his conversation with Michigan Attorney General Dana Nessel - i.e.

*"FYI, just spoke to my girl (referencing Michigan Attorney Dana Nessel), she is excited about ECR's (referencing Plaintiff Executive Car Rental's) commitment to deliver an honorable service to the residents of our great state:)...And I quote "as long as you are involved MY STAFF and I are confident that ECR (referencing Executive Car Rental) will do the right thing and become a leader in the industry"...Booyah!  Now you are stuck with me."* **(Ex. L - July 16th, 2019 Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**

26.    Immediately upon his perceived "termination" (note, Defendant Movsesyan was never employed by Plaintiff Executive), Movsesyan began sending threatening text messages to Plaintiff Waad, emphasizing $2,200 in payments to "the Ukranians" and assertions that based on Plaintiff's non-payment for money he believed he was owed, he was homeless and sleeping in his car. **(Ex. N - Text Messages from Defendant Movsesyan to Plaintiff Waad.)**

27.    Immediately upon his perceived "termination" (note, Defendant Movsesyan was never employed by Plaintiff Executive), Movsesyan engaged in systematic extortion of the Plaintiffs, which culminated with him alleging to enlist the hacking services of the same Ukranians he suggested were involved in manipulating email accounts during the 2018 Michigan Attorney General Election for the benefit of

Dana Nessel.    Either Defendant Movsesyan, or his paid Ukranian network proceeded to pirate and take ownership of the Google domains of Plaintiff Executive in both Michigan and Florida, resulting in the "owner" of Plaintiff Executive, now Defendant Movsesyan, offering disparaging responses to consumer complaints.    In doing so, Defendant Movsesyan provided links to personal information of Plaintiff Waad, and directing customers to file consumer complaints with Defendant Movsesyan's former boss at the Michigan Attorney General's Office **(Ex. O - Evidence of Hacked and Fictitious "Owner" Google Reviews).** It should be noted the attached **Exhibit O** is only a representative sample of over 250 such extortive acts performed either by, or at the direction of Movsesyan, associated with the International airport locations in Tampa, Florida and Detroit, Michigan.

28.    At all times relevant when Plaintiff Waad made efforts requesting Defendant Movsesyan to discontinue hacking the Florida and Michigan International Airport google domains, Defendant Movsesyan demanded payment in the amount of $9,500 from Plaintiff Waad and threatened that absent payment, the extortive efforts would only heighten. **(Ex. P - Text Messages From Defendant Dmitriy Movsesyan to Plaintiff Waad.)** In one such text exchange, Defendant Movsesyan

indicated *"I will consider helping you navigate through the settlement you have made with the state as soon as the invoice is paid in full,"* referencing the $9,500 extortion sum.  Defendant Movsesyan further added, *"Better hope they don't call on me to testify."* **(Ex. P - Text Messages From Defendant Dmitriy Movsesyan to Plaintiff Waad.)** It should be noted these text messages are illustrative of only a small sample of numerous threatening messages sent by Defendant Movsesyan, which included numerous derogatory images of African Americans, to Plaintiff Waad demanding financial payments for money believed to be owed.

29.    On the date of September 2nd, 2019, at 6:26 p.m.,  Defendant Movsesyan threatened Plaintiff Waad *"I'm going to the media if no payment is made by Thursfsy (sic).  Just FYI."* **(Ex. Q - Text Message From Defendant Dmitriy Movsesyan to Plaintiff Waad.)**

30.    On numerous occasions, and in direct response to Defendant Movsesyan's threats, Plaintiff Waad paid in excess of $3,000 under duress and threat of continued economic harm to the company.

31.    At all times relevant, the systematic multi-state extortion caused irreparable harm to the Plaintiffs exceeding $75,000.

### COUNT I – HOBBS ACT EXTORTION
#### (Hobbs Act 18 U.S. Code § 1951)

31.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

18 U.S.C. § 1951(a) provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.As used in this section:

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States, all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof, all commerce between points within the same State through any place outside such State and all commerce over which the United States has jurisdiction.

32.   In *United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir. 1972), the Third Circuit held that the following instruction properly defined extortion under the

statute: The term 'extortion' means the obtaining of property from another with his consent induced either by wrongful use of fear or under color of official right. The term 'fear,' as used in the statute, has the commonly accepted meaning. It is a state of anxious concern, alarm, **apprehension of anticipated harm to a business or of a threatened loss.**

33.    Defendant Movsesyan, in the manner incorporated by reference in the preceding paragraphs, did on numerous occasions engage in the act of "extortion" hereby defined by obtaining property (money) from the Plaintiffs, induced by wrongful use of actual or threatened force, violence, or fear to wit; engaging in actual, and threatened force and fear through hacking into Plaintiff Executive's corporate domains, and making hundreds of derogatory and defamatory comments for the purpose of causing financial harm to the Plaintiff's business.

34.    At all times relevant, the Defendant's systematic multi-state extortion caused irreparable harm to the Plaintiffs exceeding $75,000.

## COUNT II - STATE CAUSE OF ACTION EXTORTION

**750.213 Malicious threats to extort money.**

Sec. 213.

Malicious threats to extort money—Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

35.     Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth, herein.

36.     Michigan law recognizes the cause of action of extortion. *Marlatte v. Weickgenant*, 147 Mich 266, 275; 110 NW 1061 (1907).

37.     The Michigan Supreme Court has ruled a party can recover for money that has been extorted, and in the existence of aggravating circumstances, a party can recover money exceeding that which was extorted. *Marlatte v. Weickgenant*, 147 Mich 266, 275; 110 NW 1061 (1907).

38.     Further, the Michigan Supreme Court has held that "unlawful and malicious threats may by reason of their intended results become actionable." *Edwards v Grisham,* 339 Mich 531, 535; 64 NW2d 715 (1954).

39.     The Edwards Court explained that a party may recover where the "thing threatened" is unlawful and "the making of a threat" is also unlawful. Id. at 534. Accordingly, threats are also actionable.

40.     Defendant Movsesyan, as stated above, with specificity and particularity, hereby at all times adopted by reference, did both orally and by means of written communication, threaten both Plaintiffs Waad and Plaintiff Executive with injury to their property with the express intent to extort money, or any gain a pecuniary advantage, with the intent to compel them to perform an act against their will; to wit pay money to suppress further acts of commercial terrorism enlisted by himself and his Ukranian associates responsible for the pirating of the corporate domain. **(See referenced Text Message and Email Exhibits incorporated by reference herein).**

41.     At all times relevant, the Defendant's systematic multi-state extortion caused irreparable harm to the Plaintiffs exceeding $75,000.

**WHEREFORE**, Plaintiffs respectfully requests declaratory relief from this Honorable Court as outlined above, and further requests judgment against Defendant Movsesyan for compensatory damages for whatever amount the jury finds necessary, and further demands judgment against Defendant in whatever amount the jury finds necessary, in addition to all costs, interest, and actual attorney fees pursuant to 42 U.S.C. § 1988, and such other relief as this Honorable Court deems just, and equitable under the circumstances **including immediate injunctive relief to relinquish all control over the aforementioned company domain and associated password protected accounts.**

Respectfully submitted,
/s/ Steven A. Haney
Steven A. Haney (P63947)
Haney Law Group, PLLC
Attorney for Plaintiffs
3000 Towncenter Drive; Suite 2570
Southfield, Michigan 48075
517.414.1470
steve@haneygroup.net

Date: September 4th, 2019

UNITED STATES FEDERAL COURT
EASTERN DISTRICT

MAHER WAAD, an individual;
EXECUTIVE   CAR   RENTAL,   a   Michigan
Corporation

       Plaintiffs,

                                 Case No.
vs.                             Honorable:

DMITIRY MOVSESYAN, an individual,

       Defendant.

_____

HANEY LAW GROUP, PLLC
STEVEN A. HANEY, SR. (P63947)
Attorney for Plaintiffs
3000 Towncenter Drive, Suite 2570
Southfield, MI 48307
Tel - 248.414.1470
steve@haneygroup.net

_____

**DEMAND FOR JURY TRIAL**

    **NOW COME**, Plaintiffs, Maher Waad, an individual and Executive Car

Rental, a Michigan Corporation, through their attorney, Steven A. Haney, Sr. of the

of the Haney Law Group, PLLC, and hereby demands a Trial by Jury of the above-referenced cause of action

Respectfully submitted,

/s/ Steven A. Haney
Steven A. Haney (P63947)
Haney Law Group, PLLC
Attorney for Plaintiffs
3000 Towncenter Drive. Suite 2570
Southfield, Michigan 48075
517.614.2304
steve@haneygroup.net

Date:  September 4th, 2019